# .IN THE COURT OF APPEALS OF IOWA

No. 25-1402
Filed July 22, 2026

**State of Iowa,**
Plaintiff–Appellee,

v.

**Nathaniel Kyren Bevers-McGivney,**
Defendant–Appellant.

Appeal from the Iowa District Court for Calhoun County,
The Honorable Derek Johnson, Judge.

**AFFIRMED**

Matthew B. De Jong of De Jong Law Firm P.C., Rochester, Minnesota,
attorney for appellant.

Brenna Bird, Attorney General, and Tessa Register and Andrew B. Prosser,
Assistant Attorneys General, attorneys for appellee.

Considered without oral argument
by Schumacher, P.J., and Badding and Sandy, JJ.
Opinion by Schumacher, P.J.

1

**SCHUMACHER, Presiding Judge.**

Nathaniel Bevers-McGivney appeals his conviction for murder in the first degree, a class "A" felony, in violation of Iowa Code sections 707.1 and 707.2(1)(a) (2024), asserting there is insufficient evidence to support the conviction. Upon our review, we affirm.

## I.     Background Facts & Proceedings

On the evening of September 22, 2024, seventeen-year-old M.J. borrowed her mother Annette's green electric scooter to travel to a local park in Farnhamville. This was a regular practice for M.J. On most days she would drive the scooter to the park to swing and listen to music. M.J. would return home from the park by 10 p.m., which was her curfew on school nights. But on this September night, 10 p.m. came and went; M.J. did not return home.

Annette became worried and checked outside hoping to see the scooter approaching. When there was no sign of M.J., she called M.J.'s cell phone, which rang continuously with no answer. Annette then contacted another daughter, Shawna, to request assistance with the search. Shawna got in her car and drove around the park and adjacent streets but did not see her sister. Shawna then picked up Annette, and they drove around town searching for M.J.

Eventually, they saw the green scooter being pushed down the street. They initially thought it was M.J. pushing the scooter until they drove closer. They discovered it was a male pushing the scooter, later identified as Bevers-McGivney. After Bevers-McGivney claimed the scooter was his, Annette confirmed it was her scooter, then called 911. Bevers-McGivney walked away from the scooter, but Shawna followed him in her car. Annette also followed him on the recovered scooter. Shawna called her boyfriend, Jordan, for

assistance. When Bevers-McGivney stopped walking away from them, Shawna exited her car, and Jordan arrived with his handgun.

Annette caught up to the group on her scooter. Shawna then looked in the basket attached to the scooter and found M.J.'s shoe, partially covered in blood. Jordan then pulled out his handgun and told Bevers-McGivney to lay on the ground. When law enforcement arrived, the patrol lights revealed that Bevers-McGivney's clothes were covered in blood. He was detained and patted down. Law enforcement located a hooked blade on Bevers-McGivney, part of a Mossy Oak knife set that comes with three detachable blades.

Law enforcement obtained a search warrant for Bevers-McGivney's apartment. They discovered blood around the apartment, another of the blades from the Mossy Oak set, and the knife handle in a trash can. The knife handle was caked with blood and hair.

At the park, officers found a pool of blood leading to a trail of blood, which indicated dragging. There was still no sign of M.J.

The next morning, an employee at a local business noticed a rolling trash bin next to a cornfield. The employee found M.J.'s body in the bin. Her body was transported for an autopsy.

The autopsy revealed M.J. had been stabbed twenty-six times and her throat had been cut. She had several incised wounds. The last remaining Mossy Oak knife blade was found imbedded deep in her back. Forensic analysis determined the blood on Bevers-McGivney's shirt, the blood on the knife handle, the blood from the park, and the blood in Bevers-McGivney's apartment all belonged to M.J.

Bevers-McGivney was charged with first-degree murder and abuse of a corpse. After a bench trial, the district court convicted him on both charges. Bevers-McGivney was sentenced to life without the possibility of parole. He appeals, challenging only the murder conviction.

## II.    Analysis

Bevers-McGivney asserts that the evidence is insufficient to support his conviction of first-degree murder because the State did not prove he acted with malice aforethought. We reject that argument.

Challenges to a criminal verdict are reviewed for correction of errors at law. *State v. Hawkins*, 27 N.W.3d 562, 567 (Iowa 2025). We are bound by the district court's findings of fact "if supported by substantial evidence." *Id.* at 567–68. Evidence is substantial if it "would convince a rational factfinder the defendant is guilty beyond a reasonable doubt." *Id.* at 568. "[W]e view the evidence in the light most favorable to the verdict," including "all inferences and presumptions fairly drawn from and supported by the evidence." *Id.* We are highly deferential to the district court's verdict. *Id.*

In convicting Bevers-McGivney of murder in the first degree, the district court found: (1) he stabbed M.J. and cut her throat; (2) M.J. died as a result; (3) he acted with malice aforethought; and (4) Bevers-McGivney "acted willfully, deliberately, premeditatedly and with specific intent to kill [M.J.]." Bevers-McGivney challenges the third and fourth elements, asserting the method of his actions and lack of eyewitnesses indicates he acted without malice or premeditation.

Malice aforethought, an "essential element of first-degree murder," is defined as "a fixed purpose or design to do some physical harm to another that exists before the act is committed." *State v. Newell*, 710 N.W.2d 6, 21

(Iowa 2006) (cleaned up). Circumstantial evidence is usually required to prove malice, as it "is a state of mind." *Id.* Importantly, "[t]here is a permissive presumption of malice aforethought when the defendant uses a dangerous weapon." *State v. Serrano*, No. 21-1624, 2022 WL 10802513, at *3 (Iowa Ct. App. Oct. 19, 2022).

Here, the evidence showed that Bevers-McGivney utilized a knife when killing M.J., an "indisputably . . . deadly weapon." *See State v. O'Shea*, 634 N.W.2d 150, 157 (Iowa Ct. App. 2001). M.J.'s autopsy showed that she was stabbed multiple times, and a blade was found buried in her back. *See State v. Poyner*, 306 N.W.2d 716, 718 (Iowa 1981) (determining that several stab wounds "supply strong evidence of malice and intent to kill"); *State v. Halladey*, No. 24-0531, 2025 WL 2538383, at *4 (Iowa Ct. App. Sep. 4, 2025) (finding substantial evidence to support a conviction when "the medical examiner . . . confirm[ed] the victim died as a result of multiple blows to the head"). We find the district court did not err in finding Bevers-McGivney acted with malice aforethought.

Next, Bevers-McGivney contends there was insufficient evidence that he acted with premeditation, deliberation, or specific intent to kill. Our courts have defined these terms as follows:

> To deliberate is to weigh in one's mind or to consider. To premeditate is to think or ponder upon a matter before action. Premeditation and deliberation may not be presumed. It may not be inferred from intent. However, premeditation and deliberation need not exist for any particular length of time.

*State v. Harrington*, 284 N.W.2d 244, 247 (Iowa 1979) (citation omitted). And "specific intent requires an act calculated to produce a result that the law forbids" and "is present when from the circumstances the offender must

5

have subjectively desired the prohibited result." *State v. Fountain*, 786 N.W.2d 260, 264 (Iowa 2010) (cleaned up).

As with our analysis of malice aforethought, the evidence showing that Bevers-McGivney stabbed M.J. multiple times creates an inference of deliberation. *State v. Linderman*, 958 N.W.2d 211, 222 (Iowa Ct. App. 2021) (finding that multiple inflictions of injury to the victim allows a factfinder to "infer deliberation and thoughtfulness with each blow"). Also, the use "of a deadly weapon, if accompanied by an opportunity to deliberate . . . is evidence from which a trier of fact may find malice, deliberation, premeditation, and specific intent to kill." *State v. Self*, No. 24-1727, 2026 WL 43636, at *5 (Iowa Ct. App. Jan. 7, 2026) (quoting *State v. Jespersen*, 360 N.W.2d 804, 807 (Iowa 1985)); *State v. Pierce*, No. 23-1367, 2026 WL 221588, at *7 (Iowa Ct. App. Jan. 28, 2026) (finding that a defendant being armed with a knife, pursuing the victim, and stabbing victim multiple times "impl[ied] malice, willfulness, deliberation, premeditation, and specific intent to kill").

Further, Bevers-McGivney attempted to conceal the murder by hiding M.J.'s body in a trash bin and moving the bin away from public view. He also threw away the knife handle. *State v. Buenaventura*, 660 N.W.2d 38, 49 (Iowa 2003) (finding defendant removing evidence of a murder demonstrates premeditation).

Lastly, Bevers-McGivney also argues that an absence of proven motive may affect whether he acted with premeditation, specific intent, or deliberation. Motive is not a necessary element of first-degree murder and is simply a consideration the factfinder may make in analyzing mens rea elements. *See State v. Hoffer*, 383 N.W.2d 543, 549 (Iowa 1986).

We conclude the district court did not err in determining Bevers-McGivney acted with deliberation, premeditation, and specific intent.

## III.    Conclusion

For the above reasons, we affirm the conviction of first-degree murder.

**AFFIRMED.**